**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                             Case No.:

TOBIAS BACANER, M.D.;
TOBIAS & JILL BACANER
REVOCABLE TRUST;
THEODORE FERGUSON, II;
TIMOTHY FERGUSON;
PARAGON COMMUNITY
HEALTHCARE, INC.; and
COBALT PHARMACY, INC.;

     Defendants.

_____/

## DECLARATION OF MARK BIONDOLINO

     I, Mark Biondolino, declare under penalty of perjury that the following statements are true and correct:

     1.     I work for the Drug Enforcement Administration ("DEA") as a diversion investigator in the Miami Field Division, Tampa District Office. I became a diversion investigator in October, 2017, after retiring from the St. Louis Police Department in St. Louis, Missouri, with 22 years as a police officer and detective.

     2.     When I became a diversion investigator, I attended the DEA's Basic Diversion Investigator School in Quantico, Virginia. This is a 12-week

course that teaches diversion investigators the requirements of the Controlled Substances Act, 21 U.S.C. § 801, et seq., (the "CSA") with which DEA registrants must comply. The course also trains diversion investigators in the practices and techniques that the DEA uses to determine whether a registrant is complying with the CSA and its implementing regulations.

3.     I have conducted or participated in numerous investigations of pharmacies and physicians since becoming a diversion investigator.

4.     In December, 2018, I was assigned to investigate Dr. Tobias Bacaner and Cobalt Pharmacy. I provide this declaration in support of the United States' motion for a preliminary injunction.

5.     According to his Florida Department of Health profile, Dr. Bacaner is a medical doctor licensed to practice in Florida, British Columbia, Indiana, and Utah. Dr. Bacaner is trained and board-certified in general surgery. Beginning in 2014, he practiced pain management at Paragon Community Healthcare, Inc., (the "Paragon Clinic") which Theodore and Timothy Ferguson own.

6.     Paragon Clinic is a Florida not-for-profit corporation owned by Timothy and Theodore Ferguson. Paragon Clinic has a principal address of 6131 U.S. Highway 19, New Port Richey, Florida, 34652.

7.      Timothy and Theodore Ferguson own the Paragon Clinic and owned Cobalt Pharmacy together with Dr. Bacaner and Theodore Ferguson.

8.      The Tobias & Jill Bacaner Revocable Trust (the "Trust") is a trust through which Dr. Bacaner co-owned Cobalt Pharmacy.

9.      Cobalt Pharmacy, Inc., is a Florida corporation that operates as a retail pharmacy and is located at 7135 State Road 52, Suite 103, Hudson, Florida, 34667. The Fergusons incorporated Cobalt Pharmacy on February 15, 2016. Shortly thereafter, Dr. Bacaner became an owner individually and then through the Trust.

10.     On August 20, 2019, as part of DEA's investigation into Cobalt Pharmacy and Dr. Bacaner, Task Force Officer Malenie Gonzalez and I met with Dr. Bacaner and the Fergusons. At that time, we also served a subpoena for patient records on Timothy Ferguson, who is the registered owner of Paragon Clinic.

11.     During that interview, the Fergusons explained that Paragon Clinic accepts only self-pay (cash) patients. The cash prices charged by Paragon Clinic were approximately $230 for the patient's first visit, and $195 for each subsequent visit. Urine drug screens cost $25.

12.     The Fergusons explained that they formed Paragon Clinic as a not-for-profit corporation because they offer free or reduced services to

veterans, family discounts, and free or discounted services to indigent patients. Dr. Bacaner's medical records reveal that he had a high volume of patients residing at the same address, e.g., a husband and wife, receiving the same or similar course of controlled substances. Dr. Bacaner explained that one of the reasons this happens because of Paragon Clinic's "family discount."

13.     The Fergusons knew how to recognize diversion, abuse, and misuse of controlled substances. For example, Theodore Ferguson told DEA investigators that, because of his experience as a former sheriff's deputy, former state investigator, and private investigator, he is very knowledgeable about diversion and illicit activity related to prescription narcotics. In fact, Theodore Ferguson provided a copy of his curriculum vitae showing his previous work as a narcotics task force officer, sheriff's deputy, and Medicaid fraud investigator. The CVs provided to the DEA by the Fergusons and Dr. Bacaner are attached as **Exhibits A, B,** and **C** to this declaration.

14.     The Fergusons also knew that Paragon Clinic attracted a large number of drug-seeking patients. For example, Theodore Ferguson claimed to DEA investigators that Paragon Clinic often discharged patients for problems with prescription narcotic dependence, for using illicit narcotics, for presenting false medical records, and for having obvious signs of illicit drug use such as "track marks."

15. Dr. Bacaner's medical records reveal that, contrary to Theodore Ferguson's statements to the DEA, patients with these obvious signs of illicit drug use continued to receive dangerous controlled substance prescriptions.

16. The Fergusons have been closely involved in the operation of Paragon Clinic. They participated in screening new patients and discharging existing patients. They participated in crafting patient agreements and clinic rules, such as (1) "Do not arrive more than 15 minutes early for your appointment"; (2) "No smoking, standing . . . by the front outside door"; and (3) "No loitering or littering . . . in the parking lot." Rules such as these are typically not needed or found at a legitimate medical clinic but instead occur at clinics trying to avoid attention from law enforcement.

17. Beginning in 2017 or 2018 and until December 2, 2020, the Fergusons and Dr. Bacaner (individually and later through the Trust) jointly owned Cobalt Pharmacy.

18. In connection with issuing a DEA registration for Cobalt Pharmacy, DEA investigators conducted an interview of Timothy and Theodore Ferguson and presented a PowerPoint presentation to them explaining the pertinent CSA requirements for pharmacy registrant. Among other things, the DEA's PowerPoint presentation and interview notified the Fergusons of the CSA's prescription requirement, with a specific focus on a

pharmacy's corresponding responsibility to ensure that a prescription is issued for a legitimate medical purpose by a physician acting in the usual course of professional practice.  The DEA described red flags of diversion as including the geographic distance of a patient from his prescriber or pharmacy, cash payments, physicians prescribing outside their scope of training, pattern prescribing, and customers living at the same address and obtaining the same drugs.  The DEA also provided the Fergusons a DEA Pre-Registration Packet containing a copy of 21 C.F.R. § 1306.04 and other regulations and guidance on the handling of controlled substances by a pharmacy. Timothy and Theodore Ferguson both agreed to abide by the law as owners of the pharmacy and said they would share this information with Dr. Bacaner.

19.     The DEA's PowerPoint presentation and Pre-Registration Packet are attached as **Exhibit D** and **Exhibit E** to this declaration.

20.     The DEA also advised Timothy Ferguson that neither Paragon Clinic nor Dr. Bacaner should refer patients to Cobalt Pharmacy or require patients to fill prescriptions at Cobalt Pharmacy and that all patients of Paragon must have an opportunity to fill prescriptions at a pharmacy of their choice. Timothy Ferguson stated that he understood and that he would inform his brother and Dr. Bacaner.

21.     Cobalt Pharmacy began dispensing controlled substances on March 2, 2018. The first two prescriptions dispensed were for Schedule II opioids written by Dr. Bacaner to Timothy and Theodore Ferguson.

22.     From March 2, 2018, to September 8, 2020, 67.98 percent of the total controlled substances dispensed by Cobalt Pharmacy were prescribed by Dr. Bacaner. This amounts to total of 1526 controlled substance prescriptions or 128,412 dosage units.

23.     I reviewed the prescribing patterns of Dr. Bacaner between December 16, 2013, and June 19, 2019, as well as the dispensing patterns of Cobalt Pharmacy. In this review, I identified several red flags of diversion with both defendants.

24.     For example, between 2013 and 2019, Dr. Bacaner prescribed drugs to 2,337 patients. Of those patients, 96 percent (2,245 individuals) received an opioid. During the period described above, Dr. Bacaner's top patient received a total of 22,036 controlled substance doses, or roughly more than 300 pills each month over six years.

25.     Oxycodone was the top drug prescribed by Dr. Bacaner with approximately 2,000,000 pills prescribed and dispensed, followed by hydromorphone with approximately 1,000,000 pills, morphine with approximately 700,000 pills, and methadone with approximately 800,000 pills.

26.     In prescribing these powerful narcotics, Dr. Bacaner often prescribed the highest strength formulation, such as oxycodone 30 milligrams, hydromorphone 8 milligrams, and morphine 30 milligrams. Dr. Bacaner wrote prescriptions for oxycodone more than any other drug, with a total of 18,587 prescriptions for oxycodone.

27.     A large percentage of Dr. Bacaner's patients received the same amounts and strengths of drugs, which suggests a lack of individualized treatment.

28.     Approximately 88 patients or former patients of Dr. Bacaner died between 2013 and 2019, which is approximately four percent of his patients. Of these deaths, at least 16 involve some form of drug toxicity. Data from E-FORSCE, Florida's Prescription Drug Monitoring Program ("PDMP") database shows that all 16 received prescriptions from Dr. Bacaner within 40 days of their deaths.

29.     During my interview with Dr. Bacaner, he said that he sees a large number of patients taking high-dose narcotics. Dr. Bacaner said that his practice is to decrease his patients' overall dose and dosage units whenever possible to the CDC's 90 MME guideline. He also stated that in general he doesn't prescribe high dosage amounts to his patients. However, a review of

PDMP records for some of Dr. Bacaner's deceased patients shows Dr. Bacaner increasing these patients' doses and dosage units over time.

30.     Despite the known risks involved in prescribing combinations of central nervous system depressants like opioids and benzodiazepines, Dr. Bacaner frequently prescribed drug cocktails including an opioid with a benzodiazepine, and often adding a third sedative, a muscle relaxer. These combinations of controlled substances are extremely dangerous and can easily lead to an overdose or overdose death because of the drugs' effect on a person's central nervous system and ability to breathe. Moreover, these drug cocktails, especially when combined with a muscle relaxer, are commonly sought after by drug abusers because of the heroin-like euphoria or high they can induce.

31.     Dr. Bacaner's patients also frequently received a combination of opioids and benzodiazepines.

32.     On December 19, 2019, the DEA served an administrative subpoena for Dr. Bacaner's patient records on Theodore Ferguson at the Paragon Clinic.

33.     On May 14, 2020, Timothy Ferguson informed the DEA that Dr. Bacaner was no longer associated with the Paragon Clinic.

34.     On July 15, 2020, the DEA served an administrative subpoena on Cobalt Pharmacy for patient records.

35.     After August 20, 2020, Cobalt Pharmacy no longer filled prescriptions for Dr. Bacaner's patients.

36.     Dr. Bacaner's controlled substance prescribing continued well beyond his departure from Paragon Clinic. Data from the PDMP database, shows Dr. Bacaner writing controlled substance prescriptions as of January 13, 2021. At present, Dr. Bacaner's Florida medical license still contains Paragon Clinic as his address of record. Dr. Bacaner remains a DEA-registered physician.

37.     Until closing and surrendering the pharmacy's DEA registration on or around January 21, 2021, the Fergusons and Dr. Bacaner (through the Trust) own Cobalt Pharmacy. PDMP data shows no controlled substance dispensing by Cobalt Pharmacy after September 8, 2020.

38.     At present, the Fergusons still own and operate Paragon Clinic.


2/18/2001

Mark Biondolino
Diversion Investigator
Drug Enforcement Administration
Miami Field Division
Tampa District Office

# EXHIBIT A

# I.-II Cobalt Pharmacy Owners & Corporate Officers

## Theodore Kenneth Ferguson, II,  A.A. (CEO)

**DOB:** ████ /1955

**SSN:** ████████





## THEODORE K. FERGUSON, II

**EXPERIENCE:**

2014 – Present      Paragon Community Healthcare, Inc.          New Port Richey, FL
                    Owner – Medical/Mental Health Clinic Nonprofit

2009 – 2014         Trident Medical Management, Inc.            New Port Richey, FL

Owner – Medical/ Mental Health Clinic

| | | |
|---|---|---|
| 2005 – Present | Investigative Intelligence, Inc.<br>Owner – Private Investigator | Florida |
| 2005 – 2007 | LNI Institute, Inc.<br>Director: Cert. Legal Nurse Inv. Instructor | Tampa, FL |
| 1998 – 2004 | Florida Attorney General's Office<br>Medicaid Fraud Control Unit<br>Law Enforcement Investigator II | Tampa, FL |
| 1987 – 1998 | Pasco County Sheriff's Office<br>Deputy Sheriff; Investigator | New Port Richey, FL |
| 1979 – 1987 | City of Grandview Heights Police Dept.<br>Police Officer; Fed. Narc. Task Force | Grandview Hts., OH |
| 1975 – 1979 | Ohio State University Hospital<br>Clinical Drug Administration Technician | Columbus, OH |

**EDUCATION:**

| | | |
|---|---|---|
| 1993 | Saint Leo University<br>Associate of Arts Deg. - Criminal Justice | Saint Leo, FL |
| 1979 | Ohio State Highway Patrol Academy<br>Ohio Law Enforcement Training Cert. | Columbus, OH |

# SPECIALIZED TRAINING:

- Healthcare Fraud Training Conferences (Fed/State)
- Advanced Interviews & Interrogations
- Computer Crime Investigations
- Conspiracy Investigations Seminar
- Crime Scene Investigations
- Criminal Investigations
- DEA Advanced Narcotic Investigations
- Digital Evidence Seminar
- Informant Management Seminars
- Money Laundering Seminars
- Sex Crimes Investigations
- Transnational Terrorism Seminar



# STATE OF FLORIDA

## DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

Time printed: 5/3/2017 8:00:25 AM

## Record Detail

| Customer Name: | Driver License Status: | |
|---|---|---|
| THEODORE K FERGUSON II | Valid | |

| DL/ID: | SSN: | Class: E |
|---|---|---|

**Previous DUI:** 0

*This count reflects total DUI convictions on record.*

**Previous DWLS:** 0

*This count reflects total DWLS convictions on record.*

| | Address: UNAVAILABLE | Date of Birth: | Gender: | Height: 5' 6" | |
|---|---|---|---|---|---|
| | **Original License Issue Date:** 04/01/1987 | **Issued:** 04/26/2011 | **Expires:** /2019 | **Replaced:** 12/11/1987 | |
| | **CDL Status:** | | | | |
| | **Form Number:** X061104260566 | | | | **EIN:** |
| | **Citizen Status:** US CITIZEN | **Country of Birth:** US OF AMERICA | **State of Birth:** OHIO | | |
| SAFE DRIVER | **Race:** CAUCASIAN | | | | |

*(signature: Theodore K. Ferguson)*

| Restrictions: A - CORRECTIVE LENSES | Endorsements: | Conditional Messages: |
|---|---|---|

# EXHIBIT B

8113935

# Timothy E. Ferguson, MBA, CPIM, CPPS (CFO)

**DOB:** ████ 1959

**SSN:** ████████

████████████

**Email** ████████████



**Confident, enthusiastic team player** with over 40 years of Pharmaceutical, Medical Device and DoD industry operations, supply chain, quality assurance, quality control, aftermarket service planning, strategic planning, compliance, safety, security, logistics, transportation, import, export, operations support, customer service and distribution experience. Consistent history of cutting costs, improving performance, and improving technological capabilities. An excellent communicator who is dedicated to continuous improvements/customer enthusiasm!

## EMPLOYMENT HISTORY

Positions of increasing responsibility and scope for multi-billion dollar companies in Pharmaceutical, Medical healthcare and National Defense sector. Assignments:

## Paragon Community Healthcare 2014 to current

## Vice President Co Vigilance and Regulatory

Responsible for managing the quality operations of medical facility that includes financial, marketing, administrative, regulatory, quality, personnel and facilities management functions. This includes maintaining compliance with all federal, state,

local and company regulations related to quality of product, employee and donor safety. Manage facility audit processes and resolve any related issues that arise from the audit.

## Trident Medical Management 2009 to 2014

## Director of Risk Management and Regulatory Control

Responsible for managing the operations of medical facility that includes financial, marketing, administrative, regulatory, quality, personnel and facilities management functions. Supervises the daily functions of staff activities Supervise the operations within the facility. This includes maintaining compliance with all federal, state, local and company regulations related to quality of product, employee and donor safety. Manage facility audit processes and resolve any related issues that arise from the audit. This includes collaborating with management team to prepare for and host internal and external auditors and ensuring timely response and closure to audit observations. This includes forecasting and attaining production and cost goals, while assuring compliance with local and federal regulations. Includes staff communication, providing feedback to employees, developing staff talent, administering compensation, and assisting in management of the recruiting process.

## Raytheon Corporation 2008-2009

Responsible for strategic direction, security, safety and execution of the 'MINUTE MAN MISSILE' property program management (Minot AFB), including the trajectory computerized space MRV/SWAP (MMM 'brain'), this was to replace a failed unit with a refurbished one if possible same day. Management of all capital,

management and coordinated communications between departments to ensure satisfaction.

**Quality Assurance Transition Coordinator:** Charged with overseeing transfer of quality/ production capabilities to Largo facility. Developed inspection plans, operating procedures, transition methodology and training programs for CAPA, design control and QSP Management of 21 CFR Part 820, ISO9001:2000 controlled product. Trained operations, quality and service on new products and procedures.

**Johnson & Johnson Manufacturing Team 1981 – 1986**
**Quality Assurance & Manufacturing**.

# EDUCATION & CERTIFICATIONS PAST AND PRESENT

- B.A., M.B.A., A.M.S., Advanced Management Studies, Tampa College
- CPIM Certified in Production & Inventory Management (APICS Certified)
- C-TPAT Certification: Space Coast World Trade Council (Customs Trade Partner Against Terrorism)
- CPPS Certified as a professional property specialist (NPMA Certified)
- National Association of FTZ (NAFTZ)
- National Safety Council (NSC)
- American Society Quality (ASQ)
- National Association of Property Management (NPMA)

Trade Zone objectives. Enhanced demand management and supply chain workflow by enhancing flow through plan in all Pharmaceutical and Nutritional facilities. Developed safety and security plans in this highly matrixed organization and improved distribution, traffic, logistic procedures to maintain infrastructure and groups. Responsible for attainment of $9million freight budget as well as shipment of all finished goods globally. Improved on time delivery (OTD), process cycle times, and turnaround time (TAT). Ensured freight contract negotiation for optimum pricing for the corporation. Direct contact with Federal authorities for the Foreign Trade Zone, such as local police, U. S. Customs, FBI, FDA, DEA, OSHA, MCA and others. Directs the off-shore procurement, coordination of finished goods from Cardinal affiliates, including all import/export, contract packaging and specialty configuration of specialty packaging/shipping. **Consolidated 5 off site warehouses in state of the art 'Logistics Command Center':** in excess of 2.5 million dollars in savings. Reduced excess/obsolete inventory by 45%. Coordinated the efforts to open **Cardinal HealthCare's first Foreign Trade Zone**.

## Baxter Instrument Services Management Team 1986 – 1999

**Service Logistics Distribution:** Managed the Global forecasting, planning, purchasing, scheduling, inventory control, hardware coordination, security and safety enforcement, field service replacement (Renal Swaps) and distribution of all service and finished good materials. Provided logistic support to all products to plant, corporate, domestic and global Baxter distribution points. This includes repair and overhaul and refurbishment services.

**Production Planner:** Integrating three distinct product lines between biotech and renal (PD/Hemo/Auto-C). Determined finished goods, refurbishment, and service requirements. Provided distribution/operation support and supply chain

engineering service, and activities including sub-contractor and Government Property. Security level '**SECRET CLEARANCE'**.

## Conax Florida Corporation 2007

Responsible for strategic direction, security, safety and execution of Conax Florida Corporation property management and inventory control objectives. This includes: Receiving inspection quality initiatives and prioritization of product. Management of all capital, engineering service, and activities including sub-contractor and Government Property and produced all standard operating protocols (SOP's).

## TD Grace Logistics Corporation 2003 – 2007

Direct day to day operations for this third-party consulting corporation. Includes transportation, import and export, budgeting and 3PL warehousing and all aspects of integrated supply chain. Develops strategic plans for Corporations which include port security CAPA, design control and QSP Management of 21 CFR Part 820, ISO9001:2000and consulting with DOT, OSHA, C-TPAT, FDA, DEA, U.S. Customs, and Department of Homeland Security, FBI and the State Department and Florida Dept. of Health.

## Cardinal Health Leadership Team 2000 – 2003

## Manager, Logistics group, Foreign Trade Zone, US Customs Compliance:

Responsible for strategic direction, security, safety (NFPA 101) and development and execution of Cardinal Health's Logistics, US Customs Compliance and Foreign

# EXHIBIT

# Tobias Jay Bacaner, M.D. (Sec./Treasurer)

**DOB:** ████ 1959

**SSN:** ████████

████████████

**Email** ████████████



## *CURRICULUM VITAE*

**NAME:**                          **TOBIAS J. BACANER, M.D.**

**BIRTHPLACE:**                Berkeley, CA

**HOME OF RECORD:**       Minneapolis, MN

**CITIZENSHIP:**          United States

**OFFICE**:

Email:

**MILITARY STATUS**:       **CAPT, MEDICAL CORPS, USN (RET)**

## PROFESSIONAL EXPERIENCE:

**Feb 13 – present**      **Paragon Community Healthcare, Inc.**

**Medical Director   New Port Richey, FL**

**Feb 12 – present**      **Censeo Healthcare**

**Staff Physician      Dallas, Tx**

**Jun 05 - Mar 11**       **Staff General Surgeon**
**Flight Surgeon**

Naval/VA Hospital, Great Lakes
Naval Station, Great Lakes

**Aug 02 – Dec 04**       **Director, Surgical Services**
Naval Hospital, Pensacola
Pensacola, FL

**Aug 02 - May 05**       **General Surgeon**
Naval Hospital, Pensacola
Pensacola, FL

**May 01 – Jun 02**       **Medical Staff President**
Halyburton Naval Hospital
Cherry Point, NC

| Oct 00 – Jul 02 | **Department Head**<br>General Surgery Department<br>Halyburton Naval Hospital<br>MCAS Cherry Point, NC |
|---|---|
| Jun 98 – Oct 00 | **General Surgeon**<br>**Naval Hospital, Jacksonville**<br>**Jacksonville, FL** |
| | **Flight Surgeon**<br>**General Medical Officer**<br>**General Surgeon**<br>**Medical Department**<br>**USS JOHN F KENNEDY (CV 67)** |
| Ma 90 – Jun 92 | **Flight Surgeon**<br>**General Medical Officer**<br>**CARRIER AIR WING THREE**<br>**DET Naval Air Station, Cecil Field** |

## MAJOR OPERATIONAL EXPERIENCE:

| Aug 90 – Mar 91 | **Desert Shield/Storm**<br>**CARRIER AIR WING THREE(CVW-3)** |
|---|---|
| Apr 97 – Oct 97 | **Mediterranean Deployment**<br>**USS JOHN F KENNEDY (CV-67)** |
| Jan 02 – Mar 02 | **Wartime Detainee Med Support**<br>**FLEET HOSPITAL 20**<br>**Guantanamo Bay, Cuba** |

## EDUCATION:

| Jul 95 – Jun 96 | **Chief Resident in General Surgery**<br><br>**University of California, Davis-East Bay Oakland, CA** |
|---|---|
| Jul 92 – Jun 95 | **Resident in General Surgery**<br>**University of California, Davis-East Bay Oakland, CA** |

Jul 88 – Jun 89      **Resident in General Surgery**
University of Virginia
Charlottesville, VA

Jul 87 – Jun 88      **Intern in General Surgery**
University of Utah
Salt Lake City, UT

Aug 83 – Jun 87      **Boston University School of Medicine**
Boston, MA

Sept 79 – Jun 83      **University of Minnesota**
**BA Physiology**

**Minneapolis, MN**

**MED LICENSE:**

| | | |
|---|---|---|
| **Utah** | **180654-1205** |
| **Florida** | **ME 57418** |
| **California** | **G075796** |
| **DEA** | **FB4117695** |

**CERTIFICATIONS:**

American Board of Surgery
FAA Airman Commercial Multiengine Land
Flight Hours: 1,342 TT (330 turbine)

**ADMINSTRATIVE TRAINING:**

Interagency Health Care Executive Leadership
Navy Bureau of Medicine Business Planning
TRICARE Financial Management Executive
Course Navy Senior Legal Course
CNET Advanced Officer Leadership Course
NSHS Management Development Course
Health Care and Health Care Organization Law
Financial Accounting
Cost Accounting
Business Law
Federal Civil Procedure
Contract Law

Tort Law
Partnership and Agency Law
Real Property Law
DVATEC Disaster and Incident Command
Training Risk Communication
Navy Civilian Personnel Management
Course NHCP Department Head Course

**MILITARY QUALIFICATIONS:**

NAVAL FLIGHT SURGEON
AIRBORNE PARACHUTIST
EXPERT RIFLEMAN (M 16)
SHARPSHOOTER
PISTOL(9mm)

SHIPBOARD DAMAGE
CONTROL SHIPBOARD
FIREFIGHTING

**OPERATIONAL TRAINING:**

Combat Casualty Care
Course Chem/Bio/Rad
Casualty Care Course
Fleet Hospital Operations Indoctrination
Course Fleet Hospital Field Operations
Course
CBNRE EMPRC Clinicians Course

**AWARDS:**   MERITORIOUS SERVICE MEDAL (1st
and 2nd) NAVY ACHIEVEMENT
MEDAL
NAVY UNIT
COMMENDATION JOINT
MERITORIOUS UNIT
ARMED FORCES
SERVICE MEDAL
ARMED FORCES EXPEDITIONARY MEDAL
SOUTHWEST ASIA SERVICE MEDAL
(1ST AND 2ND) SEA SERVICE
DEPLOYMENT (1ST AND 2ND) NATIONAL
DEFENSE MEDAL
KUWAIT LIBERATION MEDAL

**PUBLICATIONS:**

1.                          Bacaner TJ, Young JN, DeCampli WM, Hardy

C.Pericardial Substitute and Emergency Resternotomy:Lifesaving Combination, *Pediatr Cardiol* 17:1996

1.                      Organ CH, Peskin GW, Bacaner TJ.      Historical Contributions to Gasless Laparoscopy. p 1-10.In Smith RS and Organ, CH (Eds.) *Gasless Laparoscopy with Conventional Instruments*, Norman Publishing, San Francisco,  1993.

2.             Koehler RH, Smith RS, Bacaner TJ.    Triage of American Combat Casualties:      The Need For Change. *Military Med* 159:541-45, 1994.

3.           Young JN, Bacaner JT, Powell, CA.Preperitoneal Suprahepatic Pacemaker Generator Placement In The  Pediatric Population. *Ann Thorac Surg 63:1486-8, 1997.*

**INVITED PRESENTATIONS:**

1.    University of California, Davis-East Bay Surgery Grand  Rounds:
*Management of Thyroid  Nodules.*

2.    University of California, Davis-East Bay Surgery Grand  Rounds:
*The Clinical Utility of Portacaval  Shunts.*

3.    University of California, Davis-East Bay Surgery Grand  Rounds:
*Helicobacter Pylori as Etiology in Acid-Peptic   Disorders.*

4 .    University of Virginia Thoracic Surgery/Pulmonary Medicine Grand Rounds:
*Superior Sulcus  Tumors.*

5.    University of Virginia Surgery/Gastroenterology Grand  Rounds:
*Carcinoid Tumors.*

# CME:

University of Minnesota Colorectal Surgery  Update
University of Minnesota Annual  Surgery Conference: Advances in
Hepatic, Biliary, and Pancreatic  Surgery Advanced Trauma Life
Support (Faculty) Department of Defense TRICARE  Conference
Institute for Healthcare Improvement/National  Forum

# EXHIBIT D




# DEA PHARMACY PRE-REGISTRATION PRESENTATION

## Drug Enforcement Administration

## Tampa District Office Diversion Group

## 2020

# DEA PHARMACY PRE-REGISTRATION PRESENTATION

## Handouts

- **Title 18 USC – Crimes and Criminal Procedures**
- **21 CFR 1306.04 Purpose of issue of prescription**
- **21 CFR 1301.13(j)**
- **21 USC 843(a)(4)(A)**
- **18 USC 1347**
- **Pamphlet A Pharmacist's Guide to Prescription Fraud**
- **Title 21 USC Section 823 – Registration Requirements**
- **224 E-Signature Application Information**

2

# Which Pharmacies are Required to Apply for DEA Registrations?

Any person who is required to be registered and who is not so registered, shall make application for registration for one of the following groups of **controlled substances activities**, which are deemed to be independent of each other. Application for each registration shall be made on the indicated form, and shall be accompanied by the indicated fee.

## The application fees are not refundable.

**IMPORTANT:  Notify the DEA Office in advance of any actions regarding any pharmacy changes, moving, selling, transfer and/or closing of business.**

3

# Introduction of Registration and Application Process for a Retail Pharmacy
# Title 21 Code of Federal Regulations Part 1300

**21 USC §843. Prohibited Acts C**

- **(a) Unlawful acts**

- **It shall be unlawful for any person knowingly or intentionally—**

- **(4)(A) to furnish false or fraudulent material information in, or omit any material information from, any application, report, record, or other document required to be made, kept, or filed under this subchapter or subchapter II of this chapter**

4

# Introduction of Registration and Application Process for a Retail Pharmacy
# Title 21 Code of Federal Regulations Part 1300

**False or fraudulent <u>material</u> information**
- **Not filling out the initial application**
- **Misleading responses to Liability Questions**
- **Misrepresenting:**
  - **True Ownership ("Straw Ownership")**
  - **Financial information**
  - **Untrue statements state/local licensure, history of handling controlled substances, etc.**

**Omit any <u>material</u> information**
- **Silent partners**
- **criminal activity**
- **Involvement in health care fraud schemes**

**PENALTIES**
(1) Except as provided in paragraph (2), any person who violates this section shall be sentenced to a term of imprisonment of not more than 4 years, a fine under title 18, or both.

5

# HEALTH CARE FRAUD-
# Medicare/Medicaid



**Health-care fraud**

# The $272 billion swindle

**Why thieves love America's health-care system**

May 31st 2014 | MIAMI AND NEW YORK | From the print edition

6

# Office of Diversion Control Mission

To prevent, detect, and investigate the diversion of controlled substances from legitimate sources

*while*



Ensuring an adequate and uninterrupted supply for legitimate medical and scientific purposes

7

# Why DEA Regulates You

- Accessibility
  - Providing health care solutions to those in your communities
- Availability
  - Controlled substances are a scarce good
- Authority
  - Local, State, and Federal Licensure
- Accountability
  - You stand to lose more than money





8

# Being a Health Care Provider is more than being a Drugstore

- Higher Standard of Care
  - Customers are patients
  - Public expects enhanced knowledge
  - Trust
- Inherently Dangerous Business
  - Addictive Products
  - Lethal Products
  - Protect against waste, fraud and diversion of controlled substances





9

# Retail Pharmacy Requirements

State and Local Licenses
- Florida Dep't of Health Pharmacy License
  - Complete-every license, certificate, etc. you need to be in business
  - Accurate-business records shall not contain false/misleading info
  - Current

- CMEA Sales Certification (if selling pseudoephedrine/ephedrine products over the counter)

- Occupancy and Tax Certifications

- Pharmacy Department Manager

- Records and Recordkeeping

- Reporting

- Security

10



# Recordkeeping

**What you receive**
- DEA Forms-222, Copy 3
- Wholesaler Invoices
    - DEA Forms 222 for C-II and Invoices for C III-V contain substantially the same elements

**What you have**
- Inventories
    - Initial
    - Biennial
    - Newly Scheduled/Rescheduled

**What you dispense/distribute**
- Prescriptions (separate CII and CIII-V prescriptions)
- DEA Forms-222, Copy 1
- DEA Forms-41 (destruction)
- DEA Form -106 (theft/loss)

# DEA 222 Official Order Forms





Triplicate Carbon Form:
Brown Copy 1 – Supplier / Green Copy 2 – DEA Office / Blue Copy 3 - Purchaser

*(Refer to Pharmacy Manual Page 23)*

12

# Powers of Attorney for DEA Forms-222

- The e-signature on your DEA Application is the only person in the pharmacy authorized to execute a DEA Form-222

- That person may, however, designate an Attorney-In-Fact via a Power of Attorney Form (POA) to execute Forms-222.  Authorization is also revoked in the same manner

- An example of a POA letter is found in 21 CFR 1305.05(c)

*Power of Attorney information (See Pharmacy Manual Page 24)*

# CONTROLLED SUBSTANCE ORDERING SYSTEM  (CSOS)

Why would a pharmacy want to use CSOS????

- The allowance for electronic ordering of Schedule I & II controlled substances
- Timely and accurate validation of a CSOS Subscriber's DEA credentials
- Reduced number of ordering errors
- No line item limit on a single order
- Reduced amount of paper in the ordering process
- Faster transaction times
- Lower cost per transaction

17



# Recordkeeping - INVENTORIES

For each controlled substance in finished form the inventory shall include:

(A) The name of the substance;

(B) Each finished form of the substance (e.g., 10-milligram tablet or 10-milligram concentration per fluid ounce or milliliter);

(C) The number of units or volume of each finished form in each commercial container (e.g., 100-tablet bottle or 3-milliliter vial); and

(D) The number of commercial containers of each such finished form (e.g. four 100-tablet bottles or six 3-milliliter vials).

*If the substance is listed in Schedules II, make an exact count or measure of the contents; or

**If the substance is listed in Schedule III, IV, or V, make an estimated count or measure of the contents, unless the container holds more than 1,000 tablets or capsules in which case he/she must make an exact count of the contents.

15



# Recordkeeping - INVENTORIES

All inventories taken must indicate the date it was taken and whether it was taken at the opening or close of business.

*Initial inventories* are to be taken when the pharmacy commences business.  If there are no controlled substances at the pharmacy (which is most likely the case) the initial inventory *must* indicate this fact.

*Biennial inventories* are new inventories taken within two years of the initial inventory.  The *biennial inventory* may be taken on any date subsequent to the initial or previous biennial inventory—as long as it is taken *at least within* two years of the previous inventory.

*Inventories for newly controlled substances*  shall be taken on the effective date a substance is added to any schedule of controlled substances, shall inventory all stocks of the substance on hand.  Thereafter, such substance shall be included in each inventory made by the registrant pursuant to paragraph (c) of this section.

16

# Maintaining Records

Every record required to be kept by DEA shall be kept for at least two years—if the State requires more than two years, you will follow the State's rule.

Required records must be kept in a manner that is 'readily retrievable' for inspection by DEA Investigators at the registered location.

*See Title 21, Code of Federal Regulations (CFR), Section 1304.04 for more information related to the maintenance of records and inventories—Pharmacy Manual, Page 22.*



# Combat Methamphetamine Epidemic Act of 2005 (CMEA)

- If you are going to handle List 1 Chemical Products, typically pseudoephedrine, you must do:  training online and self certification after training.

- You will also be required to keep a log book of pseudoephedrine sales.

- For all relevant information please visit: www.deadiversion.usdoj.gov, click on Resources and find CMEA third down on the drop down box

18

# Combat Methamphetamine Epidemic Act Online Registration





# REGISTRATION CERTIFICATE FORM DEA 223





# REGISTRATION CERTIFICATE FORM DEA 223





# PRESCRIPTIONS and RED FLAGS















LEAVE PRESCRIPTIONS
HERE

NO INSURANCE
FOR ANY
Roxicodone

FREE SODA OR
WATER WHILE YOU
WAIT FOR YOUR
RX'S.

NO CELL PHONE
USE IN PHARMACY

WE DO NOT
ACCEPT ANY
INSURANCE ON :
OXYCODONE
PRODUCTS BY
MALLINCKRODT OR
ACTAVIS,
OXYCONTIN,
OXYCODONE ORAL
SOLUTION,
OXYCODONE ER
OR LA PRODUCTS

All new patients must have
their MRI report or else have
your doctor fax us a copy of
the report. 561-588-8562

29





- Purpose of issue of prescription:
- Title 21 CFR 1306.04
- Section 1306.04 (a) refers to the pharmacists "**<span style="color:red">corresponding responsibility</span>**" to ensure the prescription is filled for legitimate medical purpose and in the normal course of the prescribers professional practice.
- *Breaches of the pharmacist's corresponding responsibility **may** be imputed to the pharmacy owner(s)... That would be YOU.*

(*Refer to Pharmacy Manual Page 29*)

31



# TELEMEDICINE

UNDER FLORIDA LAW

Controlled substances shall not be prescribed through the use of telemedicine *except for the treatment of psychiatric disorders*. This provision does not preclude physicians or physician assistants from ordering controlled substances through the use of telemedicine for patients hospitalized in a facility licensed pursuant to Chapter 395, F.S

Physicians and physician assistants shall not provide treatment recommendations, including issuing a prescription, via electronic or other means, unless the following elements have been met:

- (a) A documented patient evaluation, including history and physical examination to establish the diagnosis for which any legend drug is prescribed.

- (b) Discussion between the physician or the physician assistant and the patient regarding treatment options and the risks and benefits of treatment.

- (c) Maintenance of contemporaneous medical records meeting the requirements of Rule 64B8-9.003, F.A.C.

# Possible "Red Flags" of Diversion on a Prescription must be Resolved before Filling and Dispensing

- The following list contains common indicators of diversion by prescriptions that are facially "legitimate"
  - Distance of physician from patient or pharmacy's address
  - Distance of patient from pharmacy or physician's address
  - Drug, Dosage, or Quantity does not make sense
  - Diagnosis Code of script does not make sense with drug prescribed

# Possible Red Flags of Diversion on a Prescription that must be Resolved

- Prescriptions written by physicians that would not ordinarily treat the condition for which a prescription was written.  (*Examples:  an ophthalmologist treating patients for back pain; a gynecologist treating males for pain*).

- Prescriptions that are *not* facially legitimate should NEVER be filled (*per se* fraudulent.)  These include prescriptions that:
    - contain forged physician signatures;
    - false physician office information;
    - Prescription paper that is abnormal



# Other Potential "Red Flags"

- Factory like prescribing, multiple patients getting same drug, dosage and quantity
- Patients with the same diagnosis codes repeatedly

- Patients using the same address getting the same drugs
- Patients coming in often for early refills
- Patients offering cash in lieu of insurance when they have insurance

35



# Potential "Red Flags" Continued

- Patients arriving together at the pharmacy with scripts from the same doctor

- Patients milling around outside the pharmacy

- A patient typically sending another person to pick up their prescriptions



36



# Potential "Red Flags" Continued

- Unlike fraudulent prescriptions that should *never be filled* when identified, prescriptions that were issued by duly authorized practitioners are presumptively legitimate—unless the pharmacist identifies an abnormality (*red flag*) on the prescription.  The pharmacist has a responsibility to diligently attempt to resolve any *red flags* before filling.

- In addition, a corresponding liability rests upon the pharmacist, including a pharmacist employed by a central fill pharmacy, who fills a prescription not prepared in the form prescribed by DEA regulations (21 CFR Sect. 1304.05(f)).

37

# Some Resources for Resolving "Red Flags"

- **<u>Check Florida E-FORCSE</u>**
- Verify/Discuss prescriptions with physicians

- Know your patients/ask questions

- Does the prescription make sense based upon the condition, the drug, and the patient
- Inquire if distances are involved any why the patient chose your pharmacy
- Get to know the physicians in your area

38



Office of Diversion Control

# Some Common DEA Record Keeping Violations



# Common DEA Violations During On-site Visits

- No date/amount received on DEA **222**s, CSOS, or invoices
- Sharing of CSOS passwords
- No Power of Attorney for **222**s
- No initial or biennial inventories
- Unlawful manufacturing of controlled substances

- Audit discrepancies
- Failing to report thefts and losses
- Interchanging brand and generic names in dispensing records

40



# DEA Violation Penalties

Failure to follow the Regulations related to Recordkeeping, security of Controlled Substances and Listed Chemicals, and unlawful distribution may result in:

- $10,000 up to $25,000 per violation;
- Loss of Authority to Handle Controlled Substances; and or
- Imprisonment

41

# DEA Diversion Home Page
# www.deadiversion.usdoj.gov



| HOME | REGISTRATION | REPORTING | RESOURCES | ABOUT US |

## Report Illicit Pharmaceutical Activities

**RX Abuse Online Reporting**

### Registration Support
Call: 1-800-882-9539 (8:30 am-6:00 pm EST)
Email: DEA.Registration.Help@usdoj.gov
**New Applications**
**Renewal Applications**
**Registration Changes (Address, Drug Code, Name, Schedule)**
**CMEA (Combat Meth Epidemic Act)**
**Registration for Disposal of Controlled Substances**
**Duplicate Certificate Request**
**Duplicate Receipt of Registration**
**Offices with Field Registration Program Specialists**
**Order Forms (DEA 222)**
**Registration Validation**

## What's New

Stepan Company (July 30, 2015)
Pharmacore (July 30, 2015)
Apertus Pharmaceuticals (July 30, 2015)
Cambridge Isotope Lab (July 30, 2015)
American Radiolabeled Chemicals, Inc. (July 30, 2015)
Syed Jawed Akhtar-Zaidi, M.D.; Decision and Order (July 20, 2015)
Temporary Placement of Acetyl Fentanyl Into Schedule I (July 17, 2015)



**DEA Forms & Applications**



**Publications & Manuals**



**Questions & Answers**



**Meetings & Events**

42

# Diversion Website Resources
# www.deadiversion.usdoj.gov

- Registration modifications
- Reporting (DEA 106, CSOS, etc.)
- CMEA
- 21 CFR
- 21 USC
- Drug Disposal Information

- Federal Register Notices
- Questions & Answers
- Contacts



43

# Questions

**Website: [www.deadiversion.usdoj.gov](http://www.deadiversion.usdoj.gov)**

**Registration Office in Florida:  1-800-667-9752**

**Registration Unit DEA Headquarters:  1-800-882-9537**



# EXHIBIT E



**Office of Diversion Control Registrant instruction on how to access the DEA Website for information and registering on-line.**

**Website Login: www.deadiversion.usdoj.gov**

**REGISTRATION SUPPORT**

   **Toll Free for Florida: 1-800-667-9752**

Save time by applying for or renewing you DEA Registration online.
Data will be entered through a **secure connection** to the **ODWIF** online web application system.
**Minimum requirements:**
Credit Card and a web browser that supports **128-bit encryption.**

**On the left side of the Diversion Website you find useful links.**

**Scroll down to the link listed below, to find the Pharmacist's Manual and the Practitioner's Manual:**
-Click on Info & Legal Resources, scroll down and click on the Publication and Manuals link and scroll down open the link for Manuals.

For Contact information on Diversion Offices click on any of the links listed below:
-About Us
-Offices and Directories
        -DEA Headquarters
        -Field division Locations
        -Mailing Addresses
        -Registration Contact Information
        -Tactical Diversion Squads

**The Websites Quick Links on the right hand side is designed to assist you with New Applications, Renewing Applications, Order 222 Forms, and Registration Validation, just click on the link and follow the instructions.  The Registration Validation link will assist the Pharmacist to verify the validity of Physician's DEA Number.**

**DEA Registration Validation Login:**
**Important:** Please enter you DEA information to login (not the DEA# you are attempting to validate)
**DEA Number** (Required-Not Case Sensitive)
**Last Name or Business Name** (Required-Not Case Sensitive)
As it appears on your registration Example:
        If "Smith, John Q MD" is on your registration, then enter: **Smith**
        If "Smith's, Pharmacy" is on your registration, then enter: **Smith's**
        If "Smith's Pharmacy" (no comma) is on your registration, then enter: **Smith's Pharmacy**
**SSN** (Required if given on application)
**Tax ID** (Required if given on application)

**Registration Changes - Use for the following Registration Changes:**

Name Changes | Schedule Changes | Drug Code Changes | Address Changes - ***Do not submit*** *this until you have an approved state license for the new address. Please note that these changes will become effective immediately upon DEA approval.*

# Title 21 Code of Federal Regulations
# Part 1306-Prescriptions
# General Information

Corresponding Responsibility

### §1306.04 Purpose of issue of prescription.

(a) A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (**21 U.S.C. 829**) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

(b) A prescription may not be issued in order for an individual practitioner to obtain controlled substances for supplying the individual practitioner for the purpose of general dispensing to patients.

(c) A prescription may not be issued for "detoxification treatment" or "maintenance treatment," unless the prescription is for a Schedule III, IV, or V narcotic drug approved by the Food and Drug Administration specifically for use in maintenance or detoxification treatment and the practitioner is in compliance with requirements in **§1301.28** of this chapter.

NOTICE: This is an unofficial version.  An official version of this publication may be obtained directly from the Government Printing Office (GPO)

## 224 E-signature application information:

**WARNING**: 21 USC 843(d), states that any person who knowingly or intentionally furnishes false or fraudulent information in the application is subject to a term of imprisonment of not more than <u>4 years, and a fine under Title 18 of not more than $250,000, or both.</u>

By typing my full name in the space below, I hereby certify that the foregoing information furnished on these application/DEA forms pages is true and correct and understand that this constitutes an electronic signature for purposes of these applications/DEA forms only.

*Name of Certifying Applicant/Official (For individual registrants, the registrant themselves MUST complete the E-Signature)

Certifier Name: ███████████████████

This electronic application/DEA form must be certified by the applicant/registrant, if an individual; by a partner of the applicant, if a partnership; or by an officer of the applicant, if a corporation, corporate division, association, trust, or other entity. <u>See 21 C.F.R. § 1301.13(i)</u> for more information on who can certify this application.

Falsification of Application. An investigation is required on applications suspected of being fraudulent. The purpose of an investigation is to determine the extent of falsification and to secure documentation to support an Order to Show Cause to deny the registration. Falsification may consist of the applicant's failure to indicate a prior conviction of the owner-operator/officer or major stockholder of drug-related felony or revocation of a registration. Certified copies of conviction records and a copy of a Final Order will serve as documentation and are to accompany the request (DEA Form 6) for administrative action to CCD. *Falsification of information on the application is also a violation of 21 U.S.C. § <u>843</u>.*

## U.S.C. Title 18 - CRIMES AND CRIMINAL PROCEDURE
## PART I-CRIMES
## CHAPTER 47-FRAUD AND FALSE STATEMENTS

**§1001. Statements or entries generally**

    (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

        (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

        (2) makes any materially false, fictitious, or fraudulent statement or representation; or

        (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

    (b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

    (c) With respect to any matter within the jurisdiction of the legislative branch, subsection

    (a) shall apply only to—

        (1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

        (2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

(June 25, 1948, ch. 645, 62 Stat. 749; Pub. L. 103–322, title XXXIII, §330016(1)(L), Sept. 13, 1994, 108 Stat. 2147; Pub. L. 104–292, §2, Oct. 11, 1996, 110 Stat. 3459; Pub. L. 108–458, title VI, §6703(a), Dec. 17, 2004, 118 Stat. 3766; Pub. L. 109–248, title I, §141(c), July 27, 2006, 120 Stat. 603.)

The Florida Senate
2018 Summary of Legislation Passed
# Committee on Health Policy

## CS/CS/HB 21 — Controlled Substances

by Health and Human Services Committee; Health Quality Subcommittee; and Rep. Boyd and others (CS/SB 8 by Health Policy Committee; and Senators Benacquisto, Perry, Stargel, Bean, Passidomo, and Young)

CS/CS/HB 21 amends various sections of law to increase the regulation, training, and reporting required when controlled substances are prescribed and dispensed. The bill:

- Requires all prescribing practitioners who are authorized to prescribe controlled substances to complete a two-hour training course prior to biennial licensure renewal on the safe and effective prescribing of controlled substances, unless such practitioner is already required to take such a course by his or her practice act.
- Defines "acute pain" as the normal, predicted, physiological, and time-limited response to an adverse chemical, thermal, or mechanical stimulus associated with surgery, trauma, or acute illness. The term specifically does not include pain related to:
  - Cancer;
  - A terminal condition;
  - Palliative care to provide relief of symptoms related to an incurable, progressive illness or injury; or
  - A serious traumatic injury with an Injury Severity Score of 9 or greater.
- Provides restrictions on certain prescriptions written to treat acute pain by:
  - Requiring applicable health care regulatory boards to create guidelines for prescribing controlled substances for the treatment of acute pain.
  - Limiting a prescription for an opioid listed in Schedule II to no more than three days if prescribed to treat acute pain as defined. This limit is increased to seven days if determined to be medically necessary by the prescribing practitioner and with proper documentation.
  - Requiring a prescriber to co-prescribe an opioid antagonist when prescribing controlled substances for serious traumatic injury.
- Requires clinics that are exempt from the requirement to register as a pain management clinic to obtain and maintain a certificate of exemption from the Department of Health (DOH). These provisions take effect January 1, 2019.
- Requires pharmacists and dispensing practitioners to verify a patient's identity prior to dispensing controlled substances.
- Conforms an exemption allowing health care practitioners to dispense controlled substances in connection with a surgical procedure to the limits on prescribing established for Schedule II opioid medications.
- Creates an exemption to allow a physician to dispense Schedule II and III controlled substances approved by the United States Food and Drug Administration (FDA) for the medication-assisted treatment (MAT) of his or her own patients.
- Explicitly authorizes electronic prescriptions for controlled substances.
- Adds and reschedules substances to the various schedules of controlled substances.

The Florida Senate
2018 Summary of Legislation Passed
# Committee on Health Policy

- Substantially rewords the Prescription Drug Monitoring Program (PDMP) with changes including, but not limited to:
  - o Including Schedule V controlled substances in the list of drugs that must be reported to the PDMP;
  - o Requiring prescribing practitioners to consult the PDMP before prescribing controlled substances with certain exceptions;
  - o Allowing the DOH to coordinate and share Florida's PDMP data with other states' PDMPs and to enter into contracts to establish secure connections between the PDMP and prescribing or dispensing health care practitioner's electronic health records; and
  - o Allowing prescribers and dispensers with Veterans' Affairs, the military, and the Indian Health Services, and Florida medical examiners access to data in the PDMP.
- Increases the penalty from a 3rd degree felony to a 2nd degree felony for a patient or health care practitioner who knowingly obtains or provides a controlled substance that is not medically necessary.
- Creates a new 3rd degree felony for unlawfully possessing and using tableting or encapsulation machines.

The bill also provides appropriations for the Fiscal Year 2018-2019 as follows:

- $27,035,532 in nonrecurring funds is appropriated from the Federal Grants Trust Fund to the Department of Children and Families (DCF) for expenditures related to the second year of the State Targeted Response to the Opioid Crisis grant.
- $14,626,911 in recurring general revenue funds is appropriated to the DCF for community-based services to address the opioid crisis, including, but not limited to MAT.
- $5,000,000 in recurring general revenue funds is appropriated to the DOH for the purchase of emergency opioid antagonists to be made available to first responders.
- $6,000,000 in recurring general revenue is appropriated to the Office of State Court Administrator for MAT of substance abuse disorders related to the criminal justice system.
- $873,089 in recurring and $117,700 in nonrecurring general revenue funds are appropriated to the DOH for improvements to the PDMP.

If approved by the Governor, and except as otherwise provided in the act, these provisions take effect July 1, 2018.

*Vote: Senate 37-0; House 99-0*



U.S. DEPARTMENT OF JUSTICE ★ DRUG ENFORCEMENT ADMINISTRATION

# DIVERSION CONTROL DIVISION

Search



REPORTING > Reports Required by 21 CFR > Theft or Loss of Controlled Substances - DEA Form 106

**Get Email Updates:**

## Theft or Loss of Controlled Substances - DEA Form 106

**IMPORTANT NOTICE: Only those persons registered with DEA to handle controlled substances may utilize this form.**

Federal regulations require that registrants notify the DEA Field Division Office in their area, in writing, of the theft or significant loss of any controlled substance within one business day of discovery of such loss or theft. The registrant shall also complete and submit to the Field Division Office in their area, DEA Form 106, "Report of Theft or Loss of Controlled Substances" regarding the theft or loss. **(21 C.F.R. § 1301.76**(b))

DEA controlled substance registrants are strongly encouraged to complete and submit the DEA Form 106 online. In addition to being more convenient, completing the form online results in fewer errors. A link to the online DEA Form 106 is provided below.

In order to better track controlled substances reported as lost or stolen, DEA has incorporated use of the National Drug Code (NDC) number in the DEA Form 106. The NDC number identifies the manufacturer, product, dosage form, and package size. Entry of the NDC number will prompt the system to auto-populate additional fields such as the name of the product, dosage form, dosage strength, and quantity per container.

If a registrant does not have internet access, a paper copy of the DEA-106 form can be requested by writing to:

Drug Enforcement Administration
Attn: Regulatory Section/DRG
8701 Morrissette Drive
Springfield, VA 22152

For more information regarding reporting theft or loss of controlled substances, see the Federal Register Notice – **"Reports by Registrants of Theft or Significant Loss of Controlled Substances."**

### DEA Form 106 Online

Data will be entered through a **secure connection** to the online application system. **Your web browser must support 128-bit encryption.** If you have questions regarding the electronic submission of the DEA Form-106, please contact **DEA Call Center 1-800-882-9539**.

### Drug Theft/Loss Reports for 2014-2016

**NOTE**: DEA's Pharmacy Burglary and Armed Robbery data that is shown in the maps below is a reflection of information reported under the regulatory requirement to report thefts and losses of controlled substances **(21 CFR §1301.74** and **1301.76**). There is no requirement to report ultimate recovery of these drugs.

**CAUTION** should be exercised in drawing conclusions from this data. Material reported as a theft or loss does not necessarily equate to illicit use.

## Privacy Act Information for DEA Form 106

**Authority:**  Section 301 of the Controlled Substances Act of 1970 (PL-513).

**Purpose:**  Report theft or loss of Controlled Substances.

**Routine Uses:**  The Controlled Substances Act authorizes the production of special reports required for statistical and analytical purposes. Disclosures of information from this system are made to the following categories of users for the purposes stated:

Other Federal law enforcement and regulatory agencies for law enforcement and regulatory purposes.

State and local law enforcement and regulatory agencies for law enforcement and regulatory purposes.

**Effect:**  Failure to report theft or loss of controlled substances may result in penalties under Section 402 and 403 of the Controlled Substances Act.

Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Records Management Section, Drug Enforcement Administration, Washington, D.C. 20537; and to the Office of Management and Budget, Washington, D.C. 20503.

CSA Form 106

Report of Theft or Loss of Controlled Substances

Under Controlled Substances Act of 1970

INSTRUCTIONS for Form DEA-106, Report of Theft or Loss of Controlled Substances - Approved OMB Form No. 1117-0001 Expires: 10/31/2020

General Instructions

WHAT'S NEW

Changes to the Controlled Substances Section. The DEA is now requiring registrants to enter the National Drug Code (NDC) of the controlled substances lost or stolen.

Discontinued Fields. With the implementation of the NDC number, DEA will no longer require registrants to enter specific information pertaining to product lost or stolen. Inputting the NDC number will auto-populate all required information needed for data collection and report generation.

Purpose of Form

The DEA-106 is for reporting any theft or loss of controlled substances.

Do not use this form if:

1. You have not previously registered with the DEA,

2. The theft or loss you are reporting is not of a controlled substance, or

3. You want to correct minor inventory shortages.

Additional Information

The online version of Form DEA 106 has 8 sections. What follows is a description of each section and the information you will need to successfully fill out this online form. Please note that for all pages where you are required to supply information, there is a section labeled "Help." For any field on the page for which you require clarification, place the cursor in the field and click. Help text will appear in the Help section.

SPECIFIC INSTRUCTIONS

Section 1. Authentication and Report Selection

You will be asked to enter your DEA Number and your last name or the business name you used to register with the DEA. The name you supply must match exactly the name on your registration. You will be able to choose whether to file a new report or amend a report previously entered.

Section 2. Theft/Loss Details

You will be asked to provide background information relating to this loss or theft incident, such as the date and place, the type (night break-in, armed robbery, etc.), and the estimated value of the controlled substances, etc. Responses may require additional information; for example, indicating that a police report has been filed will open new fields requesting the police department's name and telephone number.

Section 3. Controlled Substances

You will be asked to provide the National Drug Code (NDC) and quantity of the controlled substance being reported as a theft or loss. If the substance is liquid or powder, you will need to enter the total milliliters/milligrams; if tablet, enter the total count of tablets.

Section 4. Signature

You will be asked to supply the name and title of the person filing this report.

Section 5. Theft/Loss Summary

Information regarding the details of the theft or loss will be presented to you for confirmation; changes to the information may be made. You may also change information in the Signature section.

Section 6. Controlled Substances Summary and Certification

Information on the substances will be displayed, and may be changed. Additionally, you will be required to enter the name of the certifying official who attests to the validity of the information included in the report.

Section 7. Submit Report

Submitting the report will generate an amendment key. Please save the amendment key in order to be able to modify information using the online DEA-106 report in the future.

Section 8. Print

You may send a copy of the DEA-106 report to your local printer. DEA regulations specify that you keep a copy of this report for two years.

Please do not use your browser's BACK and FORWARD buttons while navigating this form.

DIVERSION CONTROL PRIVACY POLICY



U.S. DEPARTMENT OF JUSTICE ★ DRUG ENFORCEMENT ADMINISTRATION
# DIVERSION CONTROL DIVISION

21 U.S.C. United States Code, 2011 Edition Title 21 - FOOD AND DRUGS CHAPTER 13 - DRUG ABUSE PREVENTION AND CONTROL SUBCHAPTER I - CONTROL AND ENFORCEMENT Part C - Registration of Manufacturers, Distributors, and Dispensers of Controlled Substances Sec. 823

## §823. Registration requirements

### (f) Research by practitioners; pharmacies; research applications; construction of Article 7 of the Convention on Psychotropic Substances

The Attorney General shall register practitioners (including pharmacies, as distinguished from pharmacists) to dispense, or conduct research with, controlled substances in schedule II, III, IV, or V and shall modify the registrations of pharmacies so registered to authorize them to dispense controlled substances by means of the Internet, if the applicant is authorized to dispense, or conduct research with respect to, controlled substances under the laws of the State in which he practices. The Attorney General may deny an application for such registration or such modification of registration if the Attorney General determines that the issuance of such registration or modification would be inconsistent with the public interest. In determining the public interest, the following factors shall be considered:

(1) The recommendation of the appropriate State licensing board or professional disciplinary authority.

(2) The applicant's experience in dispensing, or conducting research with respect to controlled substances.

(3) The applicant's conviction record under Federal or State laws relating to the manufacture, distribution, or dispensing of controlled substances.

(4) Compliance with applicable State, Federal, or local laws relating to controlled substances.

(5) Such other conduct which may threaten the public health and safety.

Separate registration under this part for practitioners engaging in research with controlled substances in schedule II, III, IV, or V, who are already registered under this part in another capacity, shall not be required. Registration applications by practitioners wishing to conduct research with controlled substances in schedule I shall be referred to the Secretary, who shall determine the qualifications and competency of each practitioner requesting registration, as well as the merits of the research protocol. The Secretary, in determining the merits of each research protocol, shall consult with the Attorney General as to effective procedures to adequately safeguard against diversion of such controlled substances from legitimate medical or scientific use. Registration for the purpose of bona fide research with controlled substances in schedule I by a practitioner deemed qualified by the Secretary may be denied by the Attorney General only on a ground specified in section 824(a) of this title. Article 7 of the Convention on Psychotropic Substances shall not be construed to prohibit, or impose additional restrictions upon, research involving drugs or other substances scheduled under the convention which is conducted in conformity with this subsection and other applicable provisions of this subchapter.

# GUIDELINE FOR PRESCRIBING OPIOIDS FOR CHRONIC PAIN

## IMPROVING PRACTICE THROUGH RECOMMENDATIONS

CDC's *Guideline for Prescribing Opioids for Chronic Pain* is intended to improve communication between providers and patients about the risks and benefits of opioid therapy for chronic pain, improve the safety and effectiveness of pain treatment, and reduce the risks associated with long-term opioid therapy, including opioid use disorder and overdose. The Guideline is not intended for patients who are in active cancer treatment, palliative care, or end-of-life care.

## DETERMINING WHEN TO INITIATE OR CONTINUE OPIOIDS FOR CHRONIC PAIN

**1** Nonpharmacologic therapy and nonopioid pharmacologic therapy are preferred for chronic pain. Clinicians should consider opioid therapy only if expected benefits for both pain and function are anticipated to outweigh risks to the patient. If opioids are used, they should be combined with nonpharmacologic therapy and nonopioid pharmacologic therapy, as appropriate.

**2** Before starting opioid therapy for chronic pain, clinicians should establish treatment goals with all patients, including realistic goals for pain and function, and should consider how opioid therapy will be discontinued if benefits do not outweigh risks. Clinicians should continue opioid therapy only if there is clinically meaningful improvement in pain and function that outweighs risks to patient safety.

**3** Before starting and periodically during opioid therapy, clinicians should discuss with patients known risks and realistic benefits of opioid therapy and patient and clinician responsibilities for managing therapy.

### CLINICAL REMINDERS

- **Opioids are not first-line or routine therapy for chronic pain**

- **Establish and measure goals for pain and function**

- **Discuss benefits and risks and availability of nonopioid therapies with patient**





**U.S. Department of Health and Human Services**
Centers for Disease Control and Prevention

**LEARN MORE** | www.cdc.gov/drugoverdose/prescribing/guideline.html



# OPIOID SELECTION, DOSAGE, DURATION, FOLLOW-UP, AND DISCONTINUATION

## CLINICAL REMINDERS

- **Use immediate-release opioids when starting**

- **Start low and go slow**

- **When opioids are needed for acute pain, prescribe no more than needed**

- **Do not prescribe ER/LA opioids for acute pain**

- **Follow-up and re-evaluate risk of harm; reduce dose or taper and discontinue if needed**



**4** When starting opioid therapy for chronic pain, clinicians should prescribe immediate-release opioids instead of extended-release/long-acting (ER/LA) opioids.

**5** When opioids are started, clinicians should prescribe the lowest effective dosage. Clinicians should use caution when prescribing opioids at any dosage, should carefully reassess evidence of individual benefits and risks when considering increasing dosage to ≥50 morphine milligram equivalents (MME)/day, and should avoid increasing dosage to ≥90 MME/day or carefully justify a decision to titrate dosage to ≥90 MME/day.

**6** Long-term opioid use often begins with treatment of acute pain. When opioids are used for acute pain, clinicians should prescribe the lowest effective dose of immediate-release opioids and should prescribe no greater quantity than needed for the expected duration of pain severe enough to require opioids. Three days or less will often be sufficient; more than seven days will rarely be needed.

**7** Clinicians should evaluate benefits and harms with patients within 1 to 4 weeks of starting opioid therapy for chronic pain or of dose escalation. Clinicians should evaluate benefits and harms of continued therapy with patients every 3 months or more frequently. If benefits do not outweigh harms of continued opioid therapy, clinicians should optimize other therapies and work with patients to taper opioids to lower dosages or to taper and discontinue opioids.

# ASSESSING RISK AND ADDRESSING HARMS OF OPIOID USE

**8** Before starting and periodically during continuation of opioid therapy, clinicians should evaluate risk factors for opioid-related harms. Clinicians should incorporate into the management plan strategies to mitigate risk, including considering offering naloxone when factors that increase risk for opioid overdose, such as history of overdose, history of substance use disorder, higher opioid dosages (≥50 MME/day), or concurrent benzodiazepine use, are present.

**9** Clinicians should review the patient's history of controlled substance prescriptions using state prescription drug monitoring program (PDMP) data to determine whether the patient is receiving opioid dosages or dangerous combinations that put him or her at high risk for overdose. Clinicians should review PDMP data when starting opioid therapy for chronic pain and periodically during opioid therapy for chronic pain, ranging from every prescription to every 3 months.

**10** When prescribing opioids for chronic pain, clinicians should use urine drug testing before starting opioid therapy and consider urine drug testing at least annually to assess for prescribed medications as well as other controlled prescription drugs and illicit drugs.

**11** Clinicians should avoid prescribing opioid pain medication and benzodiazepines concurrently whenever possible.

**12** Clinicians should offer or arrange evidence-based treatment (usually medication-assisted treatment with buprenorphine or methadone in combination with behavioral therapies) for patients with opioid use disorder.

## CLINICAL REMINDERS

- **Evaluate risk factors for opioid-related harms**

- **Check PDMP for high dosages and prescriptions from other providers**

- **Use urine drug testing to identify prescribed substances and undisclosed use**

- **Avoid concurrent benzodiazepine and opioid prescribing**

- **Arrange treatment for opioid use disorder if needed**

**LEARN MORE | www.cdc.gov/drugoverdose/prescribing/guideline.html**

## Code of Federal Regulations
Title 21 Part 1300 to End
Reference Material Information for Pharmacy/Pharmacies Excerpts of DEA Regulations and Record
Keeping Requirements
(Title 21 Sections and Sub-Sections are not all included)
DEA Internet Homepage:  www.usdoj.gov/dea
DEA's Diversion Control Program Website: www.deadiversion.usdoj.gov

## PART 1306 — PRESCRIPTIONS

### GENERAL INFORMATION

**Section 1306.04 Purpose of issue of prescription.**

**Section 1306.05 Manner of issuance of prescriptions.**

**Section 1306.11 Requirement of prescription.**

**Section 1306.14 Labeling of substances and filing of prescriptions.**

**Section 1306.21 Requirement of prescription.**

**Section 1306.22 Refilling of prescriptions.**

**Section 1306.26 Dispensing without prescription.**

## PART 1307 — MISCELLANEOUS

**Section 1307.21 Procedure for Disposing of Controlled Substances (i.e. DEA Form 41 Registrants Inventory of Drugs Surrendered or Disposal of Control Substance; Reverse Distributors)**

**Section 1307.22 Delivery of surrendered and forfeited controlled substances.**

## PART 1308 — SCHEDULES OF CONTROLLED SUBSTANCES

## PART 1311 —REQUIREMENTS FOR ELECTRONIC ORDERS AND PRESCRIPTIONS

**Subpart A — General**

**Subpart B — Obtaining and Using Digital Certificates for Electronic Orders**

**Subpart C — Electronic Prescriptions**

## PART 1314 — RETAIL SALE OF SCHEDULED LISTED CHEMICAL PRODUCTS
## Combat Methamphetamine Epidemic Act of 2005 (CMEA)

**Subpart B — Sales by Regulated Sellers**

- ❖ **Section 1314.20 Restrictions on sales quantity.**
- ❖ **Section 1314.25 Requirements for retail transactions.**
- ❖ **Section 1314.30 Recordkeeping for retail transactions.**
- ❖ **Section 1314.35 Training of sales personnel.**
- ❖ **Section 1314.40 Self-certification.**
- ❖ **Section 1314.42 Self-certification fee; time and method of fee payment.**

# Code of Federal Regulations

Title 21 Part 1300 to End

Reference Material Information for Pharmacy/Pharmacies Excerpts of DEA Regulations and Record Keeping Requirements

(Title 21 Sections and Sub-Sections are not all included)

DEA Internet Homepage:  www.usdoj.gov/dea

DEA's Diversion Control Program Website: www.deadiversion.usdoj.gov

## PART 1301 — REGISTRATION OF MANUFACTURERS, DISTRIBUTORS, AND DISPENSERS OF CONTROLLED SUBSTANCES

**Section 1301.11 Persons required to register; requirement of modification of registration authorizing activity as an online pharmacy.**

**Section 1301.13 Application for registration; time for application; expiration date; registration for independent activities; application forms, fees, contents and signature; coincident activities.**

**Section 1301.17 Special procedures for certain applications.**

**Section 1301.27 Separate registration by retail pharmacies for installation and operation of automated dispensing systems at long term care facilities.**

**Section 1301.51 Modification in registration.**

**Section 1301.71 Security requirements generally.**

**Section 1301.72 Physical security controls for non-practitioners; narcotic treatment programs and compounders for narcotic treatment programs; storage areas.**

**Section 1301.73 Physical security controls for non-practitioners; compounders for narcotic treatment programs; manufacturing and compounding areas.**

**Section 1301.74 Other security controls for non-practitioners; narcotic treatment programs and compounders for narcotic treatment programs.**

**Section 1301.90 Employee screening procedures.**

## PART 1304 — RECORDS AND REPORTS OF REGISTRANTS

**Section 1304.04 Maintenance of records and inventories.**

**Section 1304.06 Records and reports for electronic prescriptions.**

**Section 1304.11 Inventory requirements.**

**Section 1304.21 General requirements for continuing records.**

**Section 1304.22 Records for manufacturers, distributors, dispensers, researchers, importers, exporters, registrants that reverse distribute, and collectors.**

**Section 1304.40 Notification by online pharmacies.**

## PART 1305 — ORDERS FOR SCHEDULE I AND II CONTROLLED SUBSTANCES

**Section 1305.03 Distributions requiring a Form 222 or a digitally signed electronic order.**

**Section 1305.04 Persons entitled to order Schedule I and II controlled substances.**

**Section 1305.05 Power of attorney.**

**Section 1305.11 Procedure for obtaining DEA Forms 222.**

**Section 1305.13 Procedure for filling DEA Forms 222.**

**Section 1305.17 Preservation of DEA Forms 222.**

**§1305.05 Power of attorney.**

(a) A registrant may authorize one or more individuals, whether or not located at his or her registered location, to issue orders for Schedule I and II controlled substances on the registrant's behalf by executing a power of attorney for each such individual, if the power of attorney is retained in the files, with executed Forms 222 where applicable, for the same period as any order bearing the signature of the attorney. The power of attorney must be available for inspection together with other order records.

(b) A registrant may revoke any power of attorney at any time by executing a notice of revocation.

(c) The power of attorney and notice of revocation must be similar to the following format:

*Power of Attorney for DEA Forms 222 and Electronic Orders*

*(Name of registrant)*

*(Address of registrant)*

*(DEA registration number)*

*I, _____ (name of person granting* power), the undersigned, who am authorized to sign the current application for registration of the above-named registrant under the Controlled Substances Act or Controlled Substances Import and Export Act, have made, constituted, and appointed, and by these presents, do make, constitute, and appoint _____ (name of attorney-in-fact), my true and lawful attorney for me in my name, place, and stead, to execute applications for Forms 222 and to sign orders for Schedule I and II controlled substances, whether these orders be on Form 222 or electronic, in accordance with 21 U.S.C. 828 and Part 1305 of Title 21 of the Code of Federal Regulations. I hereby ratify and confirm all that said attorney must lawfully do or cause to be done by virtue hereof.

(Signature of person granting power)

I, _____ (name of attorney-in-fact), hereby affirm that I am the person named herein as attorney-in-fact and that the signature affixed hereto is my signature.

(signature of attorney-in-fact)

Witnesses:

1. _____

2. _____

Signed and dated on the _____ day of _____, (year), at _____ .

Notice of Revocation

The foregoing power of attorney is hereby revoked by the undersigned, who is authorized to sign the current application for registration of the above-named registrant under the Controlled Substances Act or the Controlled Substances Import and Export Act. Written notice of this revocation has been given to the attorney-in-fact _____ this same day.

(Signature of person revoking power)

Witnesses:

1. _____

2. _____

Signed and dated on the _____ day of _____, (year), at _____.

(d) A power of attorney must be executed by the person who signed the most recent application for DEA registration or reregistration; the person to whom the power of attorney is being granted; and two witnesses.

(e) A power of attorney must be revoked by the person who signed the most recent application for DEA registration or reregistration, and two witnesses.

Power of Attorney

*(Name of registrant)*

*(Address of registrant)*

*(DEA registration number)*

*I,* ____ *(name of person granting* power), the undersigned, who am authorized to sign the current application for registration of the above-named registrant under the Controlled Substances Act or Controlled Substances Import and Export Act, have made, constituted, and appointed, and by these presents, do make, constitute, and appoint ____ (name of attorney-in-fact), my true and lawful attorney for me in my name, place, and stead, to execute applications for Forms 222 and to sign orders for Schedule I and II controlled substances, whether these orders be on Form 222 or electronic, in accordance with 21 U.S.C. 828 and Part 1305 of Title 21 of the Code of Federal Regulations. I hereby ratify and confirm all that said attorney must lawfully do or cause to be done by virtue hereof.

(Signature of person granting power)

I, ____ (name of attorney-in-fact), hereby affirm that I am the person named herein as attorney-in-fact and that the signature affixed hereto is my signature.

(signature of attorney-in-fact)

Witnesses:

1. _____

2. _____

Signed and dated on the ____ day of ____, (year), at ____ .

Notice of Revocation

The foregoing power of attorney is hereby revoked by the undersigned, who is authorized to sign the current application for registration of the above-named registrant under the Controlled Substances Act or the Controlled Substances Import and Export Act. Written notice of this revocation has been given to the attorney-in-fact ____ this same day.

(Signature of person revoking power)

Witnesses:

1. _____

2. _____

Signed and dated on the ____ day of ____, (year), at ____.



Q & A's | Site Map | Privacy | About this Site

**Drug Enforcement Administration | Office of Diversion Control**

# E-Commerce Program

## Site Navigation

- Home
- About CSOS
- Policies
- Enroll in CSOS
- Certificate Management
- CSOS Reporting
- Developer Resources
- Contact Support

**Quick Links**

Click to select a link

**External Links**









## DEA Diversion E-Commerce Support

## Contact Information

### Self Help:

www.DEAecom.gov has a number of on-line resources to assist CSOS customers with program enrollment and certificate retrieval. Additionally, many frequently asked questions have been answered on our Q & A's page.

- On-line customer support resources
- Answers to frequently asked questions

**E-mail:** Online Support Request Form

**Phone:** 1-877-DEA-ECOM (1-877-332-3266) toll free

Our support staff is available 8:00 AM through 5:50 PM (Eastern Time) Monday through Friday. If you reach our voicemail, please leave a message and we'll return your call as soon as possible.

### Postal Mail:

**Standard mail (preferred):**

Drug Enforcement Administration
Sterling Park Technology Center/CSOS
8701 Morrissette Drive
Springfield, VA 22152

**Overnight or express mail only:**

Drug Enforcement Administration
Sterling Park Technology Center/CSOS
8701 Morrissette Drive
Springfield, VA 22152

Use the overnight/express mail address for all UPS, FedEx, DHL, and Priority Mail USPS packages.

### Have a question?

Answers to common questions have been posted in our Questions & Answers section.

Click to visit the Q&A's to see if we've answered your question

# DEA Registered Reverse Distributors

| STATE | REVERSE DISTRIBUTOR | PHONE NUMBER |
|---|---|---|
| ARIZONA | Covanta Environmental Solutions, LLC DBA Environmental Pharmaceuticals, LLC (Collector) | 480-659-9611 ext. 203 |
| | | |
| ARKANSAS | Arkansas Redistributors, LLC | (501) 904-2929 |
| | | |
| CALIFORNIA | Aemerge Redpak Services Southern California, LLC | (760) 983-2808 |
| | Outdate RX, LLC | (916) 524-6465 |
| | Outdate RX, LLC | (909) 335-7071 |
| | | |
| CONNECTICUT | Clean Harbors of Connecticut Inc. | (860) 583-3696 |
| | | |
| FLORIDA | Cavu Medical Products & Services LLC DBA Pharmatech Services | (813) 749-7113 |
| | Clean Harbors Florida LLC | (863) 519-6331 |
| | Express RX Returns | (954) 589-2386 |
| | Med Safe Solutions USA LLC | (239) 849-1315 |
| | PharmaLink | (800) 257-3527 |
| | RX Return Services | (727) 754-7848 |
| | Rx Reverse Distributors Inc. | (772) 388-1212 |
| | Woodfield Distribution, LLC | (561) 998-3885 |
| | | |
| GEORGIA | Burke Horton, Inc. D/B/A The Rx Exchange | (678) 306-1866 |
| | Danox Environmental Services Inc. | (404) 671-9163 |
| | Maximum Rx Credit MRCI | (770) 985-2136 |
| | Return Logistics | (912) 748-5100 |
| | | |
| ILLINOIS | Pharma Logistics | (847) 837-1224 |
| | Pharmaceutical Returns Services   (Collector) | (800) 215-5878 |
| | Qualanex, LLC | (800) 505-9291 |
| | | |
| INDIANA | Stericycle Inc.   (Collector) | (317) 860-1200 |
| | | |
| IOWA | National Pharmaceutical | (515) 252-7722 |
| | | |
| MASSACHUSETTS | Clean Harbors of Braintree Inc | (781) 380-7154 |
| | | |
| MICHIGAN | Drug & Laboratory Disposal Inc.   (Collector) | (269) 685-9824 |
| | Nortru LLC | (313) 824-5840 |
| | U S Industrial Technologies Inc. | (734) 462-4100 |
| | | |
| MINNESOTA | 3M Drug Delivery Systems | (651) 733-2073 |
| | E Z Pharmacy Returns, LLC | (800) 440-0613 |
| | | |
| NEW JERSEY | Advanced RX Returns DBA Omega 2000 RX Returns | (201) 222-3800 |
| | | |

July 2018

*This list of reverse distributors does not constitute an endorsement by the DEA of these companies or their products or services.*

# DEA Registered Reverse Distributors

| NEW YORK | Ark Business Services Inc. Ark RX Returns Solutions | (347) 590-2779 |
|---|---|---|
| | Devos Ltd. DBA Guaranteed Returns | (631) 689-0191 |
| | Medwiz Solutions LLC, Returns Division | (845) 624-8080 |
| | United RX Solutions, United RX Solutions | (844) 741-9718 |
| | | |
| NORTH CAROLINA | ALMAC Clinical Services, Inc. ALMAC Clinical Services LLC | (919) 479-8850 |
| | Clean Harbors Reidsville LLC | (336) 342-6106 |
| | Pharmaceutical Dimensions | (336) 664-5287 |
| | Trilogy Medwaste Southeast, LLC | (704) 865-7550 |
| | | |
| OHIO | Achieva Group Returns, Inc. | (513) 474-9900 |
| | Environmental Enterprises Inc.   (Collector) | (513) 541-1823 |
| | Flash Returns | (334) 804-4826 |
| | Heritage Thermal Services Inc. | (330) 385-7336 |
| | Stericycle Inc.   (Collector) | (317) 860-1175 |
| | | |
| OKLAHOMA | Total Returns | (580) 276-3056 |
| | | |
| PENNSYLVANIA | Chesapeake Waste Solutions | (717) 653-8882 |
| | Complete RX Returns DBA CRX | (570) 706-9589 |
| | Pharmareturns | (215) 653-7400 ext. 114 |
| | Republic Environmental Systems (Pennsylvania), LLC - Stericycle Environmental Solutions | (215) 822-8995 ext. 111 |
| | Specialty Disposal Services Inc. SDS | (973) 402-9246 |
| | | |
| TENNESSEE | Clean Harbors Tennessee LLC | (615) 643-3177 ext. 3177 |
| | Pharma-Mate Inc D/B/A Returnco   (Collector) | (706) 250-4831 |
| | Reliable Pharmaceutical Returns, LLC   (Collector) | (615) 361-8856 |
| | Return Solutions   (Collector) | (865) 675-1355 |
| | | |
| TEXAS | Med-Turn, Inc.   (Collector) | (817) 868-5300 |
| | Philip Reclamation Services-Stericycle Environmental Solutions, Inc. | (713) 679-2300 |
| | Sharps Compliance, Inc.   (Collector) | (903) 693-2525 |
| | Veolia ES Technical Solutions, L.L.C.   (Collector) | (409) 736-2821 |
| | | |
| UTAH | Clean Harbors Aragonite | (435) 884-8100 |
| | National Products Sales, Pharmaceutical Division | (801) 972-4132 |
| | | |
| WASHINGTON | P.S. Industries Inc. | (206) 749-0739 |
| | | |
| WISCONSIN | Capital Returns, Inc. DBA Genco Pharmaceutical Services | (414) 967-2800 |
| | Veolia ES Technical Solutions, L.L.C. | (262) 255-6655 |

July 2018

*This list of reverse distributors does not constitute an endorsement by the DEA of these companies or their products or services.*